OPINION OF THE COURT
Arlene P. Bluth, J.
*435 Defendant’s motion for summary judgment is granted and the complaint is dismissed.
Plaintiff commenced the instant action to recover first-party no-fault benefits in the amount of $2,670.39, plus statutory interest, costs and attorneys’ fees, for three MRI studies it allegedly conducted for its assignor, Nila Sokol. Two were allegedly performed on June 7, 2007 for which plaintiff billed defendant $879.72 and $912, and a third on June 12, 2007 for $878.67.
Plaintiffs attorneys submitted each bill to defendant with a form cover letter on the attorneys’ letterhead. In that letter, the attorneys introduce themselves and state no less than three times that defendant was to deal with the attorneys from then on. (“Accordingly, please forward all future correspondence to our attention . . . Please make this payment payable to the above-referenced provider, C/O this office . . . All correspondence including payment, EOB’s, verification requests, etc. must be mailed directly to this office. Failure to do so may result in unnecessary litigation.”) The clear import of this repetitive direction — to be followed under threat of “unnecessary litigation” — is that plaintiffs attorneys are its agents for all purposes related to the bill, and defendant must deal directly with plaintiffs attorneys. In addition, the end of the letter contains the representation that any enclosed bills, forms, “doctor’s reports, notes and narratives were prepared solely by the above-referenced provider.” Clearly, then, the plaintiff did not submit any documents from the referring physician; there was no MRI referral form or prescription submitted with any of the bills.
The defendant’s claims examiner, Cinnamon Houston, states that defendant received the first bill (for $879.72) on June 26, 2007 and timely sent a verification request on July 10, 2007. That request was sent directly to the plaintiffs attorneys and requested two items: a letter of medical necessity from the referring physician and a claim form with a valid provider’s signature. There can be no dispute that plaintiffs attorneys received this request because they responded thereto by letter dated July 17, 2007. Their response, even though titled “Verification Compliance,” completely ignored the bona fide request. Instead, it said, in essence, “whatever we gave you was good enough and this provider is not giving you anything else. If you need something from someone else, go ask them. Now pay the bill.” In addition, the attorneys state: “Any further requests to this provider are deemed unnecessary and in viola *436 tion of 11 NYCRR 65-3.2 (c).” This section states an insurer should “not demand verification of facts unless there are good reasons to do so.” (Id.) Nevertheless, Ms. Houston sent a follow-up request to plaintiffs attorneys on August 13, 2007.
Defendant received the second bill (for $912) with the same form cover letter on June 27, 2007, and it sent a request for verification, seeking the same information as sought for the other MRI taken the same date, to plaintiffs attorneys on July 10, 2007. There can be no dispute that plaintiffs attorneys received this request, because they responded thereto by letter dated July 17, 2007. Their response was the same form letter referred to above, and Ms. Houston sent a follow-up request on August 10, 2007.
When defendant received the third bill, Ms. Houston timely sent a verification request. This time, plaintiffs attorneys did not send a response and Ms. Houston sent a follow-up request on August 10, 2007.
In order to prevail on its motion for summary judgment, the movant must make a prima facie showing of entitlement to judgment as a matter of law, through admissible evidence, eliminating all material issues of fact. (Alvarez v Prospect Hosp., 68 NY2d 320 [1986].) Once the movant demonstrates entitlement to judgment, the burden shifts to the opponent to rebut that prima facie showing. (Bethlehem Steel Corp. v Solow, 51 NY2d 870, 872 [1980].) In opposing such a motion, the party must lay bare its evidentiary proof. Conclusory allegations are insufficient to defeat the motion; the opponent must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].)
In deciding the motion, the court must draw all reasonable inferences in favor of the nonmoving party and must not decide credibility issues. (Dauman Displays v Masturzo, 168 AD2d 204 [1st Dept 1990], lv dismissed 77 NY2d 939 [1991].) As summary judgment is a drastic remedy which deprives a party of being heard, it should not be granted where there is any doubt as to the existence of a triable issue of fact (Chemical Bank v West 95th St. Dev. Corp., 161 AD2d 218 [1st Dept 1990]), or where the issue is even arguable or debatable (Stone v Goodson, 8 NY2d 8 [I960]).
The court finds Ms. Houston’s affidavit explaining preparation of the verification requests and the mailing procedures with respect to all of the verification requests (the initial three *437 and the follow-up requests) sufficient to prove timely and proper mailings. Ms. Houston stated that she personally prepared each mailing, put each in the envelope, checked that it was properly addressed, and put it in her outgoing mail bin. She also stated that the regular office practice is that the mail person comes by at approximately 3:45 p.m. each afternoon, collects and stamps the mail, and then delivers it to the post office that day.
Although plaintiffs opposition correctly notes that Ms. Houston did not swear that it was her duty to ensure compliance with defendant’s mailing procedures and that she did not herself drop it in the mailbox, it is enough that “the defendant submitted admissible evidence in the form of an affidavit of an employee with knowledge of the defendant’s standard office practices or procedures designed to ensure that items were properly addressed and mailed” (St. Vincent’s Hosp. of Richmond v Government Empls. Ins. Co., 50 AD3d 1123, 1124 [2d Dept 2008], citing New York & Presbyt. Hosp. v Allstate Ins. Co., 29 AD3d 547 [2d Dept 2006], Hospital for Joint Diseases v Nationwide Mut. Ins. Co., 284 AD2d 374 [2d Dept 2001], Residential Holding Corp. v Scottsdale Ins. Co., 286 AD2d 679 [2d Dept 2001], and Delta Diagnostic Radiology, P.C. v Chubb Group of Ins., 17 Misc 3d 16 [App Term, 2d Dept 2007]). Ms. Houston’s detailed affidavit fulfills this requirement.
The verification requests were sent to the plaintiffs law firm. A letter properly mailed is presumed to have been received. (News Syndicate Co. v Gatti Paper Stock Corp., 256 NY 211 [1931].) Although an associate of that law firm submitted an affirmation in opposition to this motion, no attempt to rebut the presumption was made; conspicuously absent from that affirmation is a simple denial of receipt of the requests for verification. In opposing a motion for summary judgment, the nonmoving party must lay bare all of the facts at its disposal regarding the issues raised in the motion. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) It is no excuse that the opponent could have submitted such evidence but did not because the opponent believed that the movant’s papers were insufficient. (Mgrditchian v Donato, 141 AD2d 513 [2d Dept 1988].) The affirmant in opposition was in the position to, but did not even attempt to, rebut the presumption that plaintiffs law firm received the requests for verification shortly after Ms. Houston stated that they were mailed. Therefore, there is no question of fact as to proper mailing of the verification requests.
Having determined that defendant proved its timely and proper mailing of the requests for verification, the court turns *438 to the other bases for plaintiffs opposition. Plaintiff claims that defendant failed to present a “good reason” why further verification was necessary; this court disagrees. This court does not believe that it is unreasonable to ask for a letter of medical necessity before a carrier pays more than $2,500 for three MRIs conducted during the course of one week, approximately six weeks after an alleged accident. Defendant is not required to provide a blank checkbook to plaintiff. Rather, defendant is entitled to find out whether and why each MRI was prescribed; in other words, the carrier is entitled to inquire as to the medical necessity before it pays the bills.
Plaintiff also claims defendant violated 11 NYCRR 65-3.6 (b), which provides:
“(b) Verification requests. At a minimum, if any requested verification[ ] has not been supplied to the insurer 30 calendar days after the original request, the insurer shall, within 10 calendar days, follow up with the party from whom the verification was requested, either by telephone call, properly documented in the file, or by mail. At the same time the insurer shall inform the applicant and such person’s attorney of the reason(s) why the claim is delayed by identifying in writing the missing verification and the party from whom it was requested.”
Plaintiff argues that because defendant did not send the follow-up verification requests both to it and to its attorneys, the requests are defective. This argument lacks merit.
Because the attorney’s cover letter clearly put defendant on notice that the law firm was the agent for the medical provider for all purposes with respect to the bill submitted, sending the verification request to the attorneys was the same as sending the request to the principal. As recently stated in Bauer v CS-Graces, LLC (48 AD3d 922, 924 [3d Dept 2008]): “The law is well settled that, unless obtained confidentially, ‘ “knowledge acquired by an agent acting within the scope of his [or her] agency is imputed to his [or her] principal and the latter is bound by such knowledge” ’ (Skiff-Murray v Murray, 17 AD3d 807, 809-810 [2005], quoting Center v Hampton Affiliates, 66 NY2d 782, 784 [1985]; see Farr v Newman, 14 NY2d 183, 187 [1964]).”
Accordingly, defendant’s notice to the law firm-agent was notice to the principal-provider as a matter of law. Under the cir *439 cumstances presented here, there was no need for the insurer to send another copy to the principal.
In addition, in interpreting 11 NYCRR 65-3.6 (b), courts have found that the additional notification to the applicant and its attorney is required when the verification is requested from a third party, not when, as here, the verification is requested from the applicant. “Where verification is sought from a party other than the applicant, the applicant is entitled to be timely informed of the nature of the verification sought and from whom it is requested when, after an initial verification request remains unsatisfied, a follow-up request is necessary” (Doshi Diagnostic Imaging Servs. v State Farm Ins. Co., 16 Misc 3d 42, 44 [App Term, 2d Dept 2007]). This court notes that this very plaintiff advanced the same arguments — that the second verification request was defective because the insurer did not send an additional notification to the attorney’s client-principal — in Lenox Hill Radiology & MIA, P.C. (Dejesus) v Progressive Cas. Ins. (Civ Ct, NY County, 2008, index No. 31019/07); there, albeit after trial, Judge Jeffrey Oing also found the argument to be without merit.
Because plaintiff failed to respond to defendant’s valid and proper verification requests, the 30-day period within which defendant had to either pay or deny the claim did not begin to run. Therefore, plaintiffs claims for no-fault benefits are not overdue, this action is premature and must be dismissed. (See Hospital for Joint Diseases v State Farm Mut. Auto. Ins. Co., 8 AD3d 533, 534-535 [2d Dept 2004]; St. Vincent’s Hosp. of Richmond v American Tr. Ins. Co., 299 AD2d 338, 340 [2d Dept 2002].)
For the foregoing reasons, defendant’s motion for summary judgment is granted and plaintiff’s complaint is hereby dismissed.